(25 App. Div. 329.)

### KITTINGER v. BUFFALO TRACTION CO. et al.

(Supreme Court, Appellate Division, Fourth Department.   February 6, 1898.)

INJUNCTION—SUIT BY TAXPAYER—CONSTRUCTION OF SURFACE RAILROAD.

The legislative authority to construct surface street railroads being a legitimate exercise of the power to regulate public rights for public uses, a taxpayer cannot maintain an action to annul the acts of the legislature and of the municipal authorities granting to a corporation the right to construct surface railroads in public streets, and to enjoin the municipal officials and the corporation from proceeding further in the construction of the railroad in the manner authorized, when it is not shown that fraud existed, or that such acts would result in a waste of, or injury to, public property of the municipality.

Ward, J., dissenting.

Appeal from special term, Erie county.

Action by Joseph Kittinger against the Buffalo Traction Company and another.   From an order overruling a demurrer to the complaint, the traction company appeals.   Reversed, with leave to plaintiff to amend.

Plaintiff alleges that he is a citizen and a resident of the city of Buffalo, and owns real estate in that city, "and that his assessment for taxes upon said real estate amounts to more than one thousand dollars, and that he has been assessed and paid taxes upon said assessment within one year previous to the commencement of this action."   He also alleges that the legislative power of the city of Buffalo is vested in a common council, which consists of the board of councilmen and the board of aldermen.   The complaint also alleges, viz.: "The defendant the Buffalo Traction Company is a domestic street surface railroad corporation, organized and existing under and by virtue of the laws of the state of New York;   *   *   *   and was organized for the purpose of building a street surface railroad, exceeding sixty-four miles in length, in and through various streets, avenues, and public places in the city of Buffalo, N. Y., named in its articles of association, and of operating the said railroad by means of electricity as a motive power."   The complaint also alleges that the Buffalo Traction Company "made application to the board of railroad commissioners of the state of New York for its certificate that public convenience and a necessity require the construction of the railroad as proposed in the articles of association of said company"; and that the commissioners "found, decided, and adjudged that public necessity and conveyance did not require the construction of the railroad proposed in the articles of association of the said Buffalo Traction Company."   The complaint alleges that on the 23d of December, 1895, the board of aldermen adopted a resolution "purporting to grant permission to the said Buffalo Traction Company to build and operate its railroad in the various streets of the city of Buffalo set forth in its said application, with one or two exceptions, and to erect and maintain the necessary trolley poles for the operation of said railroad by electricity, subject to certain terms and conditions in said resolution particularly specified."   The complaint also alleges "that subsequently, at a special meeting of the board of councilmen of the city of Buffalo, on the 24th day of December, 1895, the resolution last above mentioned, purporting to grant permission to the said defendant the Buffalo Traction Company to build and operate its railroad in the various streets in the city of Buffalo, and set forth in its said application, and as adopted by the said board of aldermen, was approved and adopted by said board of councilmen."   The complaint also alleges "that the common council of the said city of Buffalo, through its board of aldermen and board of councilmen, as aforesaid, voted to give permission and consent to the defendant railway company to construct, maintain, and operate said street surface railway in the said streets and avenues and public places of the said city, wrongfully, willfully, and corruptly, in violation of their official duties to the said city and its taxpayers, and in waste of the property, funds, effects, and estate of the

said city, solely in order to favor the said defendant railway company; * * * and that they acted with undue haste and improvidence, and in reckless disregard of all proper safeguards and of the city's interests." It is also averred that on the 6th of January, 1896, "the said mayor of the city of Buffalo attempted to approve the said resolution or pretended consent to the Buffalo Traction Company, which was adopted by the said board of aldermen on the 23d day of December, 1895, and approved and adopted by the said board of councilmen on the 24th day of December, 1895, as aforesaid, and he affixed his signature thereto as mayor of the city of Buffalo." It is averred that, at the time the mayor affixed his approval to the resolution, he "knew that the same was unfavorable to the said city and to its interests, and knew that if the same should be held to be valid and legal in the form in which it then was, without the amendments previously recommended by himself or any other amendments, would result in the waste of the property, funds, effects, and estate of the said city." The complaint alleges the passage by the legislature of chapter 649 of the Laws of 1896, and that the act purports "to confer upon the said Buffalo Traction Company the consent of the legislature of the state to the construction of the said railroad, and to substitute the said legislative consent for the consent of the local authorities aforesaid, and purports and pretends to validate and confirm the consent of the local authorities to said proposed railroad lines." In the prayer of the complaint it is asked that the resolution purporting to have been adopted by the common council on the 23d and 24th days of December, 1895, and to have been approved by the mayor on the 6th day of January, 1896, be declared irregular, illegal, unauthorized, null, and void, and "for judgment declaring the said act of the legislature to be unconstitutional, null, and void, and prohibiting and enjoining the defendant the Buffalo Traction Company from in any manner exercising any of the powers or privileges purporting to have been conveyed by said pretended resolution or consent, or by said act of the legislature, and specifically prohibiting and enjoining the said defendant company from entering upon any of the streets, avenues, or public places in said pretended resolution or consent set forth, and from making any excavations therein, and from erecting any poles and from stringing any wires therein, and from doing any act in any manner connected with or under said pretended grant or resolution aforesaid; and also enjoining the defendant Edgar B. Jewett, as mayor, and the defendant the city of Buffalo, from doing or permitting any act to be done in furtherance of said pretended grant, or from consenting to or in any manner aiding the said Buffalo Traction Company in doing any act under color of the said resolution or consent, or said law." The special term found and decided "that the plaintiff's complaint states a cause of action, and the defendant's demurrer should be overruled." The Buffalo Traction Company appeals to this court from the interlocutory judgment entered on the 15th of March, 1897.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, GREEN, and WARD, JJ.

Bissell & Metcalf, for appellant.
Ford & Ferguson, for respondent.

HARDIN, P. J. Plaintiff, as a taxpayer, seeks to maintain the action, and by means thereof to prevent waste of the property of the city of Buffalo. In Adamson v. Railroad Co., 89 Hun, 261, 34 N. Y. Supp. 1073, it was held:

"A city has no power to alienate or appropriate the city streets, and has no property rights therein, and the provision of the statute authorizing an action to prevent a waste of the estate and other property of a municipality refers to property owned by the city, and within its power of disposition."

In that case it was held that the legislation which authorizes a taxpayer to maintain an action to prevent waste was not intended to enable a taxpayer to maintain an action "against the members of a common council in a city, and the administrative officers thereof,

for the purpose of restraining officials acting within the limits and scope of their powers and discretion"; and reference was made in the opinion to Ziegler v. Chapin, 126 N. Y. 342, 27 N. E. 471, where it was said:

"We have quite recently declined to become arbitrators between taxpayers and their municipal officers in every instance of disagreeing opinions or conflicting judgments, and have decided that, jurisdiction in the officials existing, the courts can interfere in actions like that before us only where some fraud or collusion or bad faith is alleged and proved."

In Potter v. Collis, 19 App. Div. 392, 46 N. Y. Supp. 471, it was held, viz.:

"The power of the legislature, unless restricted by the constitution, is absolute over the property held by a municipal corporation for public use, and it may grant to a railroad company the use of its streets."

And it was further held that, in an action authorized to be brought by a taxpayer —

"It must appear that the act complained of, or which the taxpayer seeks to restrain, is an illegal official act, or the action must be one to prevent waste or injury to, or to make good, property, funds, or estate of the municipal corporation."

And it was further held in that case, viz.:

"The fact that an applicant to a city commissioner of public works for a permit to excavate streets and avenues, in order to change the motive power of a railroad, also needs a permit from the board of electrical control, does not make illegal the act of the city commissioner of public works in granting the permit."

In that case the taxpayer's application for an injunction was denied, and the right of a taxpayer to maintain the action, upon the facts of that case, was denied.

In Kellinger v. Railroad Co., 50 N. Y. 209, Church, C. J., in referring to the decision of People v. Kerr, 27 N. Y. 188, says that it was held "that legislative authority to construct a railroad on the surface of the streets, without a change of grade, was a legitimate exercise of the power of regulating public rights for public uses, and that the city was not entitled to compensation, because it had, as a corporation, no property which was appropriated." We are of the opinion that the complaint fails to state facts sufficient to warrant a taxpayer to maintain the action for the relief sought in the complaint in this action. We must therefore reverse the interlocutory judgment, and sustain the demurrer to the complaint.

Interlocutory judgment reversed, with costs, and the demurrer sustained, with leave to the plaintiff to amend upon payment of the costs of the demurrer and of this appeal. All concur, except WARD, J., dissenting.

The complaint alleges that the plaintiff is a citizen of the city of Buffalo, N. Y., and a resident of the said city; that he owns real estate in said city, and that his assessment for taxes upon said real estate amounts to more than $1,000, and that he has been assessed and has paid taxes upon said assessment within one year previous to the commencement of this action; that the defendant the city of Buffalo is a municipal corporation, duly organized and existing and exercising the functions of such municipal corporation under and pursuant to the laws of the state of New York, and that it is a city of the first class; that the legislative power of the city of Buffalo is vested in a common council, which consists of the board of councilmen and the board of aldermen;

that the defendant Edgar B. Jewett is the mayor of the city of Buffalo; that the defendant the Buffalo Traction Company is a domestic street-surface railroad corporation organized and existing by virtue of the laws of the state of New York; that it was incorporated on the 28th of October, 1895, and was organized for the purpose of building street-surface railroads exceeding 64 miles in length through various streets and avenues in the city; that such streets and avenues embrace nearly all the streets and avenues in the city of Buffalo not already occupied by street-railroad tracks, and which are in the thickly settled parts of the city, together with all the important streets of the city not already occupied with railroad tracks; that, if the said defendant should be allowed to build in said streets, it would result in incumbering the same with railroad tracks, trolley poles, and wires, and obstructing and hindering the ordinary course of travel, and the use of such streets for the public, and would be a nuisance; that the traction company—which will hereafter be called the defendant—had applied to the board of railroad commissioners of the state of New York for its certificate that public convenience and a necessity required the construction of its railroad in the city of Buffalo; that the railroad commissioners had refused such certificate; that the defendant had applied to the common council of the city of Buffalo for its consent to lay the tracks and operate the railroad of the defendant upon the streets of the city; that such consent to the defendant to construct, maintain, and operate said street-surface railway in the said streets and avenues and public places of the said city was voted by the said common council "wrongfully, willfully, and corruptly, in violation of their official duties to the said city and its taxpayers, and in waste of the property, funds, effects, and estate of the said city, solely in order to favor the said defendant railway company, the persons who are incorporators and stockholders thereof and interested therein, and for their own personal benefit; and that in making the said grant they colluded with such persons, with intent to cheat and defraud the said city out of a large part of the value of the franchise to said city, and to confer the benefits thereof upon the said defendant railway company and said other persons, instead of upon said city and its taxpayers; and that they acted with undue haste and improvidence, and in reckless disregard of all proper safeguards and of the city's interest"; that the defendant procured the passage, by the legislature of this state, of chapter 649 of the Laws of 1896, which was a curative act, intended to relieve the defendant from obtaining the consent or certificate of the railroad commissioners, and for other purposes; that said act was not properly passed, and was void; that, while it assumed to be a general act, it was, in fact, intended to be and was a local act, which had never received the sanction of the mayor of Buffalo, as required by the constitution of this state. The complaint is very voluminous, contains many allegations of fraud and misconduct and illegality on the part of the city authorities of Buffalo and of the defendant, whereby the valuable rights, title, and privileges of the city in its streets were illegally and corruptly lost and wasted, to the loss, injury, and damage of the taxpayers of the city and the plaintiff. The defendant the traction company interposed a demurrer to this complaint: First, that there was a defect of parties defendant, naming them; second, that the complaint did not state facts sufficient to constitute a cause of action.

WARD, J. (dissenting). The learned counsel for the appellant presents but the single point upon this review, viz. that the complaint does not state facts sufficient to constitute a cause of action, and it is defective in this respect: that it is brought under section 1925 of the Code of Civil Procedure to obtain a judgment preventing waste of or injury to the estate, fund, or other property of the city of Buffalo, and that the only waste or injury is the alleged wrongful, willful, and illegal giving of the consent by the municipal authorities of the city of Buffalo to the defendant; and he claims that, although the title to the streets sought to be appropriated by the defendant's railroad is in the city, it holds such title simply as trustee for the people of this state, and the appropriation of such streets by the defendant

is not such a waste or injury to the property of the city as will permit a taxpayer in the city to maintain the action under the section of the Code cited, and he relies upon Adamson v. Railroad Co., 89 Hun, 261, 34 N. Y. Supp. 1073; Case v. Cayuga Co., 88 Hun, 59, 34 N. Y. Supp. 595; Talcott v. City of Buffalo, 125 N. Y. 280, 26 N. E. 263; Ziegler v. Chapin, 126 N. Y. 342, 27 N. E. 471; and kindred cases, which hold, in effect, that where the municipality, through its officers, acted without fraud or corruption or illegality in granting the consents or privileges sought, such action was in the nature of legislative action, and could not be attacked in a taxpayers' action.  An examination of the complaint discloses that the plaintiff can avail himself in this action not only of the provisions of section 1925, but also of chapter 531 of the act of 1881, as amended by chapter 673 of the Laws of 1887 and chapter 301 of the Laws of 1892.  This statute provides that the action may be maintained to prevent any illegal "official act * * * or to prevent waste or injury or to restore and make good any property, funds or estate of such * * * municipal corporation."  Talcott v. City of Buffalo, supra, was a taxpayers' action to restrain the city from substituting electric street lighting for that of gas in a street of that city.  The court in that case speaks of chapter 531 of the Laws of 1881, as amended, as supplementing section 1925 of the Code.  The complaint in that case assailed the proceedings as unwise, informal, and not in the best interests of the people of the city.  O'Brien, J., speaking for the court, says, at page 286, 125 N. Y., and page 264, 26 N. E.:

"The terms 'waste and injury,' used in this statute, comprehended only illegal, wrongful, or dishonest official acts, and were not intended to subject the official action of the board, officers, or municipal body, acting within the limits of their jurisdiction and discretion, but which some taxpayer might conceive to be unwise, improvident, or based on errors of judgment, to the supervision of the judicial tribunals."

But that case seems distinctly to hold that, where the acts complained of are without the power of the defendant, or where corruption, fraud, or bad faith amounting to fraud is charged, the action may be maintained.  In Adamson v. Railroad Co., supra, the question did not arise upon demurrer, but there was a trial, and upon the facts there disclosed it was held, Judge Brown pronouncing the opinion of the court, that the taxpayers' action could not be maintained, as the acts complained of were legislative acts of the municipality, within its discretion, and which could not be supervised by the courts.  And in Parfitt v. Ferguson, 3 App. Div. 176, 38 N. Y. Supp. 466, which was a taxpayers' action, where fraud and illegality were charged, Judge Brown, pronouncing the opinion of the court, sustains the view that a taxpayer may maintain the action on the ground of illegal official acts, although those acts may not cause an immediate waste of the funds of the municipality.  To the same effect is Ziegler v. Chapin, supra.  In Case v. Cayuga Co., supra, the action was to restrain the board of supervisors of that county from granting the consent of the county to the building of a street railroad in a street which passed along in front of the county buildings, the county being an abutting owner, but having no interest in the fee of the street.  The discussion of

principles by the court there governing such consents does not aid us in the determination of the question before us. The appellant's counsel contends that the plaintiff cannot stand upon chapter 531 of the Laws of 1881, as amended, because the complaint does not disclose that the plaintiff had complied with the provision of the statute which provides that upon the commencement of the action the plaintiff shall furnish a bond to the defendant therein, to be approved by a justice of the supreme court, etc., in such penalty as the justice shall require for the payment of the costs of the action. We do not think the failure to furnish such a bond devests the court of jurisdiction to proceed with the action, as it does not go to the essence of the controversy. It is simply a provision protecting the defendant from costs, and may be waived by the defendant; but, if required by it, the court will stay the plaintiff's proceedings in the action until the security is furnished in analogy to the proceedings requiring security for costs by nonresident plaintiffs, under sections 3268, 3279, Code Civ. Proc.

As we have seen, the complaint in the case at bar distinctly charges corrupt, wrongful, and illegal action as the gravamen of the cause of action, and, that being so, the action is maintainable, because the corrupt, illegal, and fraudulent action of municipalities, where injury results to the plaintiff, is always a subject of cognizance and determination by the courts. The appropriation of the streets of the city of Buffalo not already occupied by street railways for the purposes of the appellant, interfering, as it necessarily must, to a considerable extent, with the free use of the streets by the public, and inconvenience to the abutting owners, and the loss to the city of a valuable franchise, should be legally and honestly done, and the rights of the public carefully guarded, and the taxpayers of the city have the right to know whether every step taken to secure that appropriation was in accordance with law. The allegations in this voluminous complaint must be regarded as true in the disposition of the questions raised by the demurrer, and they disclose such a state of things surrounding the obtaining of this consent as connected with the municipal authorities and with the defendant that it demands the careful scrutiny and determination of a court and a jury.

The interlocutory judgment appealed from should be affirmed, with costs, with leave to the defendants to answer upon the payment of such costs within 20 days.